UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAKA SHABAZZ,<br>    Plaintiff, | :<br>:<br>: | |
| v. | :<br>: | No. 3:19-cv-1233 (VLB) |
| SANDRA SHARR, et al.,<br>    Defendants. | :<br>:<br>:<br>: | |

# ORDER

Plaintiff, Shaka Shabazz, currently confined at Osborn Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Plaintiff argued that the Defendants conspired to keep him incarcerated beyond the end of his sentence thereby violating his right to substantive due process, equal protection of the laws, freedom from unlawful restraint, and freedom to practice his religion. Plaintiff named as defendants officials from the Department of Correction and the Board of Pardons and Paroles as well as various facilities in which he was housed.

On October 4, 2019, the Court filed an Initial Review Order dismissing all claims for damages against defendants Semple, Sharr, Cepelak, Ellison and Giles, the federal substantive due process and associated conspiracy claims, and the state law claim for intentional infliction of emotional distress. Doc. #7. The Court ordered Plaintiff to file an amended complaint to reassert his class of one equal protection claim, his Eighth Amendment claims, any claim for conspiracy to deprive him of his Eighth Amendment rights, and his First Amendment religious

exercise claim. *Id.* at 14. The Court instructed Plaintiff to address the deficiencies in these claims identified in the Order and to identify which of the remaining Defendants was involved in each claim and describe specific actions taken by each of those Defendants that violated his rights. Finally, the Court notified Plaintiff that if he wished to proceed against any of the organizations named as defendants, he must provide the name of a person at each organization upon whom service may be made. *Id.*

On January 24, 2020, Plaintiff filed his Amended Complaint. He names ten defendants, Carlton Giles, Eric Ellison, Parole Officer Curry, Parole Officer Harris, and Parole Officer Gibbons, all members or employees of the Board of Pardons and Paroles; Lisa Demtteis,[1] Ashley Picazio, and Jane Doe of The Connection, Inc.; and Dennis W. Daniels and Redell Thomas of Project More, Inc. All Defendants are named in individual capacity only.

Under 28 U.S.C. § 1915A (2000), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* This requirement applies both when plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a *pro se* complaint, the Court must assume the truth of the

---

[1] Plaintiff incorrectly lists this defendant in the caption as Lisa Demtteis and in the body of the Amended Complaint as Lisa DeMatties Cepore. For purposes of this order, the Court uses the spelling in the caption.

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "*pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I. Allegations

Plaintiff completed the entirety of his ten-year term of imprisonment. Doc. #11, ¶ 14. He was released on special parole under Conn. Gen. Stat. § 54-125e. *Id.* ¶ 17. Defendant Curry referred Plaintiff to the Walter Brooks House upon his release from prison because he was homeless and did not have a sponsor in late 2017. *Id.* ¶ 15. Defendant Daniels permitted defendant Thomas to confine Plaintiff in "inmate program Walter Brooks" under conditions harsher than when he was incarcerated. *Id.* ¶ 16. Plaintiff alleges that all "parole defendants" knew that state law prohibited him from being confined in inmate programming unless

3

he had violated written conditions of special parole. *Id.* ¶ 17.

In 2018, the defendant-employees of The Connection, Inc. unlawfully restrained Plaintiff in inmate programming on two occasions at Roger Sherman House and Cochegan House. Each time, he was referred to the programs by defendants Harris and Gibbons. *Id.* ¶ 18. Descriptive literature indicates that these programs are intended for inmates prior to completion of their sentences. *Id.* ¶ 19 & Ex. B. Plaintiff argues that, while he could have been placed in these programs when he had served 85% of his sentence, it was improper to place him there when he had completed 100% of his term of imprisonment merely because he was homeless. *Id.* ¶ 20.

Plaintiff alleges that he was held under more restrictive conditions that inmates who were still serving their sentences. *Id.* ¶ 24. He could not leave to visit friends or family while other residents of the program were permitted 8-12 hours to visit their families. *Id.* ¶ 25. Only persons on his prior prison visiting list could visit Plaintiff in the programs. *Id.* ¶ 27. Anyone not on the list had to obtain approval to visit from the Department of Correction. *Id.* ¶ 28. Despite these restrictions, program staff expected Plaintiff to develop family and community ties. *Id.* ¶ 26.

All weekend movement was restricted. Staff would only approve leaving the program to go to work or the store. *Id.* ¶ 30. When plaintiff found a job, program staff would contact his employer and require the employer to call the program if Plaintiff was late for work and when he left work. The employer also was required to provide licenses and insurance information for every vehicle

Plaintiff might enter. *Id*. ¶ 31. If the employer would not agree to the conditions, Plaintiff was not permitted to work there. *Id.* ¶ 32. Plaintiff was required to pay rent of up to $100 per week, even though Plaintiff was working at a minimum wage job. *Id.* ¶ 33.

When Plaintiff filed grievances about the restrictive conditions, program staff reported the grievances to defendants Curry, Harris, and Gibbons. *Id*. ¶ 42. defendants Curry and Harris told Plaintiff he was being disruptive by filing the grievances. *Id*. ¶ 43. As a result of filing the grievances, Defendants Curry and Harris remanded Plaintiff to the Department of Correction T.O.P. program. *Id*. ¶ 44. Plaintiff contends that the T.O.P. program is a substance abuse program operated inside designated correctional facilities for 45 days and remand to that program is not an appropriate response to his lawful grievances. *Id*. ¶¶ 45-46. When the program concluded, Plaintiff was returned to the programs he challenges in this action. *Id*. ¶ 48.

On May 17, 2018, defendant Picazio refused to permit Plaintiff to go to his second day of work because he failed to timely submit a request the day before. As a result, Plaintiff was fired from the job. *Id*. ¶ 50. The Connection, Inc. handbook requires these requests only for persons searching for employment. *Id.* ¶ 51.

## II. Discussion

In the Amended Complaint, Plaintiff asserts four claims: conspiracy, deliberate indifference, denial of due process, and state law recklessness.

The Court informed Plaintiff that he could reassert his class of one equal protection claim, his Eighth Amendment claims, any claim for conspiracy to deprive him of his Eighth Amendment rights, and his First Amendment religious exercise claim in the Amended Complaint provided he could correct the identified deficiencies in those claims.  Plaintiff has not included the equal protection or First Amendment free exercise claims.  Thus, the Court considers these claims to be withdrawn.

The Court dismissed Plaintiff's substantive due process claim because persons on special parole remain under the custody of the Department of Correction and, therefore, his claims are cognizable under the Eighth, not the Fourteenth, Amendment.  Doc. #7 at 7-8.  The Court did not grant Plaintiff leave to replead a substantive due process claim and he has submitted no evidence in support of his Amended Complaint that would alter the determination that the due process claims is not cognizable.  Thus, the due process claims remain dismissed.

Regarding the Eighth Amendment claim, the Court explained that it was unable to properly evaluate the claim because Plaintiff failed to describe or submit legible information about the court-imposed conditions of his special parole or identify the party responsible for the conditions he experienced.

Plaintiff now alleges that defendants Curry, Harris and Gibbons referred him to the program and that defendants Daniels, Thomas, Demtteis, Picazio, and Doe administered the programs and imposed the allegedly unconstitutional conditions on him.  Although Plaintiff alleges no facts showing that defendants

Ellison and Giles were involved in the specific incidents alleged, he alleges that the parole defendants continued a memorandum of agreement or contract with the program defendants to provide supportive housing for homeless parolees and challenges the constitutionality of the contract. Doc. #11 ¶¶ 7-8.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized measure of life's necessities"—and a subjective element—that the Defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted). Objectively, the seriousness of a violation is determined based on contemporary standards of decency. *See Walker*, 717 F.3d at 125.

Plaintiff alleges that, although he completed serving his period of incarceration, he was housed under conditions applicable to persons on parole prior to the termination of sentence. He could only leave the residential facility for certain reasons, visits were limited, and additional conditions interfered with obtaining employment and caused him to lose a job. Plaintiff alleges that all Defendants were aware of the conditions being imposed upon him. The penal system is criticized for failing to safeguard homeless and penniless former inmates, releasing them onto the streets where they have no choice but to commit further crimes to survive. In response to these valid criticisms,

7

jurisdictions have established reentry programs to provide shelter and services for returning citizens such as Plaintiff. Plaintiff has not plead sufficient facts to allow the Court to conclude that providing Plaintiff shelter, limiting who could enter the shelter, and requiring Plaintiff to prove he had a legitimate reason to leave the shelter, violated contemporary standards of decency. The conditions to which Plaintiff objects appear reasonably designed to assure the safety and security and programmatic integrity of the facility and its residents.

## CONCLUSION

Accordingly, the Court dismisses the case again without prejudice, permitting Plaintiff a final twenty-one (21) days to plead sufficiently a claim. Failure to file an amended complaint stating a federal claim within 21 days will render the dismissal of the federal claims 'with prejudice.' There being no federal claim, the Court declines to exercise jurisdiction over any state claims which may be asserted.

SO ORDERED.

Dated this 11th day of February 2020 at Hartford, Connecticut.

                                  /s/
                                  Vanessa L. Bryant
                                  United States District Judge